## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR-BY-MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BEAR STEARNS COMMERCIAL MORTGAGE SECURITIES INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, 2005-PWR9, <br><br>        PLAINTIFF, <br><br> v. <br><br> ATOKA HOSPITALITY INC., an Oklahoma corporation, KRN ENTERPRISES, INC., an Oklahoma corporation, MCALESTER HOSPITALITY, INC., an Oklahoma corporation, NORMAN HOSPITALITY, INC. an Oklahoma corporation,  RAJENDRA K. PATEL, an individual, AND MINA PATEL, an individual <br><br>        DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 6:14-cv-00459-RAW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR FORECLOSURE OF MORTGAGE AND SECURITY AGREEMENT AND ENFORCEMENT OF GUARANTY AGREEMENTS

U.S. Bank National Association, successor-in-interest to Bank of America, National

Association, successor-by-merger to LaSalle Bank National Association, as Trustee for the

Registered Holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage

Pass-Through Certificates, 2005-PWR9 ("**Plaintiff**"), acting by and through Special Servicer

(defined below), files this complaint against Defendants, Atoka Hospitality Inc., KRN

Enterprises, Inc., McAlester Hospitality, Inc., and Norman Hospitality, Inc., (individually or collectively, as the context may require, **"Borrowers"**), and Rajendra K. Patel and Mina Patel (collectively, **"Guarantors"**) seeking, among other things, the following relief:

a.   a money judgment and foreclosure of its respective mortgages covering four (4) Oklahoma hotels, which are Plaintiff's primary collateral securing repayment of the cross-defaulted and cross-collateralized loans identified herein; and

b.   a money judgment against Guarantors for, among other amounts, the complete outstanding indebtedness on the relevant loans, as determined by this Court following the foreclosure of the Oklahoma hotels.

## I.   PARTIES

### A.   PLAINTIFF

1.   Plaintiff is a REMIC trust for which U.S. Bank National Association ("**U.S. Bank**") is the successor trustee and real party-in-interest. U.S. Bank is a national banking association with its main office in Cincinnati, Ohio. For diversity purposes, a national bank is a citizen of the state in which the bank's main office, as set forth in its articles of association, is located. *See Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 318-19 (2006). Therefore, for purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of Ohio. For all purposes of the action described in this Complaint, Plaintiff is acting by and through Special Servicer. The Special Servicer is C-III Asset Management LLC (successor to GMAC Commercial Mortgage Corporation), a Delaware limited liability company, not individually but solely in its authorized capacity as special servicer pursuant to that certain Pooling and Servicing Agreement, dated September 1, 2005. Plaintiff may be served with any pleading in this matter through its undersigned counsel of record.

### B.   DEFENDANTS

2.   Each Borrower is a corporation. For diversity purposes, the citizenship of a corporation is determined by the state of incorporation and the location of its principal place of

2

business.

        a.     Four (4) Borrowers are Defendants in this action:

              i.     Atoka Hospitality Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma ("**Atoka Borrower**");

             ii.     KRN Enterprises, Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma ("**Durant Borrower**");

            iii.     McAlester Hospitality, Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma ("**McAlester Borrower**"); and

            iv.     Norman Hospitality, Inc., is an Oklahoma corporation that maintains its principal place of business in Oklahoma ("**Norman Borrower**").

        b.     Consequently, Borrowers are citizens of Oklahoma for purposes of diversity jurisdiction.

        c.     Atoka Hospitality Inc., KRN Enterprises, Inc., McAlester Hospitality, Inc., and Norman Hospitality, Inc. may be served with summons and a copy of this Complaint through their registered agent in Oklahoma, Rajendra K. Patel, 118 N. 7th Street, Durant, Oklahoma 74701.

3.     Defendant Rajendra K. Patel is an Oklahoma resident with an office at 118 N. 7th Street, Durant, Oklahoma 74701, and may be served at this address or wherever he may be found.

4.     Defendant Mina Patel is an Oklahoma resident with an office at 118 N. 7th Street, Durant, Oklahoma 74701, and may be served at this address or wherever she may be found.

## C.   GUARANTORS OWN AND OPERATE THE BORROWERS

5.     For all of the Borrowers, Rajendra Patel is President and Director, and Mina Patel is Secretary and Director.

## II.   JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because, as noted above, complete diversity of citizenship exists between Plaintiff, on the one hand, and Borrowers and Guarantors, on the other hand, and because the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

7.      Each Borrower is an Oklahoma corporation and is accordingly subject to personal jurisdiction in Oklahoma.

8.      Guarantors are Oklahoma residents and are accordingly subject to personal jurisdiction in Oklahoma.

9.      Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because (i) a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District; and (ii) a substantial part of the mortgaged property which is the subject of this Complaint is situated in this District.

## III.    FACTUAL ALLEGATIONS

### A.    THE LOAN OBLIGATIONS AND THE COLLATERAL

#### (i)      Promissory Note

10.      Borrowers are indebted to Plaintiff pursuant to four (4) certain Promissory Notes (collectively, the "**Notes**"), each dated July 29, 2005, each executed by a separate Borrower, as maker, payable to the order of Prudential Mortgage Capital Company, LLC, a Delaware limited liability company ("**Original Noteholder**"), as payee, in the original principal amounts for each Note as described in Table 1 below.  The four (4) cross-defaulted, cross-collateralized loans evidenced by the Notes are referred to herein either individually or collectively as the "**Loans.**" True and correct copies of the Notes and related allonges thereto are attached as Exhibit 1.

#### (ii)      Properties

4

11.     Loan proceeds advanced pursuant to the Notes were used to purchase and/or refinance the four (4) hotel properties ("**Properties**"), all of which are located in Oklahoma, as listed in **Table 1** below:

<u>**Table 1**</u>
<u>**(Borrowers, Notes, and Mortgage Recording):**</u>

| | Borrowers | Note Amount | Hotel Name / Property Address | County | Recording Date / Book and Page |
|---|---|---|---|---|---|
| 1. | Atoka Hospitality Inc. | $2,300,000 | Former Best Western 2101 S. Mississippi, Atoka, Oklahoma | Atoka | August 1, 2005 679/624 |
| 2. | KRN Enterprises, Inc. | $4,600,000 | Comfort Inn & Suites 2112 W. Main Street, Durant, Oklahoma | Bryan | August 1, 2005 1091/862 |
| 3. | McAlester Hospitality, Inc. | $6,200,000 | Comfort Suites 650 George Nigh Expy, McAlester, Oklahoma | Pittsburg | August 1, 2005 1393/283 |
| 4. | Norman Hospitality, Inc. | $9,000,000 | Former Holiday Inn 1000 N. Interstate Drive, Norman Oklahoma | Cleveland | July 29, 2005 4037/138 |
| | **Total** | **$22,100,000** | | | |

### (iii)    **Real Estate Mortgages**

12.     The Loans are evidenced and secured by, among other things, the liens, security interests, terms and provisions contained within four (4) separate (Real Estate) Mortgages with Power of Sale, Security Agreement an Financing Statement, covering the Properties (the "**Mortgages**"), each executed by the Borrowers as identified in Table 1 for the benefit of Original Noteholder, and encumbering each of the four (4) separate Properties, respectively.  True and correct copies of the Mortgages are attached hereto as <u>Exhibit 2</u>.

### (iv)    **Cross-Default and Cross-Collateralization**

13.     Each individual Loan is cross-defaulted and cross-collateralized with all of the Loans, such that (i) a default under any particular Loan is a simultaneous default under the other

5

Loans; and (ii) Property that secures repayment of a particular Loan simultaneously secures

repayment of all of the other Loans.  The cross-default and cross-collateralization provisions are

consistent with Plaintiff's reliance on the combined value of the Properties in the aggregate being

greater than the value of the sum of the individual Properties. Section 4.34 of the Mortgages

provide as follows:

> "[Borrower] acknowledges that [Plaintiff] has made the Aggregate Loan to the [Borrowers] that are a party to each of the Security Instruments upon the security of their collective interest in the [Properties] and in reliance upon the aggregate of the [Properties] taken together being of greater value as collateral security than would be the case if the loans evidenced by each of the Notes were allocated among the [Properties] and recovery as against the Property and each of the Other Properties were limited to the amount so allocated. [Borrower] agrees that the Aggregate Debt is and will be cross-collateralized and cross-defaulted with each other so that (i) an event of default under any of the Aggregate Loan Documents shall constitute an Event of Default under this [Mortgage] and the Note; (ii) an Event of Default under this [Mortgage] or the Note shall constitute an event of default under the other Aggregate Loan Documents; and *(iii) each of the Security Instruments shall constitute security for each of the Notes as if a single blanket lien in the aggregate amount of [$22,100,000.00] were placed on all of the Aggregate Property as security for the Notes."*

(Emphasis added).

14.    The Court is hereby advised that in addition to the four (4) Loans that are the subject

of these proceedings, there are two (2) additional loans secured by two (2) additional Texas deeds

of trust, as follows (herein the "**Texas Loans**"):

|    | **Borrowers** | **Note Amount** | **Hotel Name / Property Address** | **Property County** |
|----|---------------|-----------------|-----------------------------------|---------------------|
| 1. | Grayson Hospitality, Inc. | $2,500,000 | Comfort Suites 2900 US Highway 75N Sherman, TX | Grayson County, TX |
| 2. | Texoma Hospitality, Inc. | $3,400,000 | Hampton Inn 2904 Michelle Drive Sherman, TX | Grayson County, TX |
|    | **Total** | **$5,900,000** | | |

15.    The Two (2) Texas Loans are cross-defaulted and cross collateralized with each

other *and the Oklahoma Loans* identified in Table 1 in the manner described in Paragraph 13

6

above.

### (v)    The Guaranties

16.    On the same day the Notes and the Mortgages (and the notes and deeds of trust for the Texas Loans) were executed, Guarantors executed six (6) substantively identical Indemnity and Guaranty Agreements (individually, a "**Guaranty**", and collectively, the "**Guaranties**"), in favor of Original Noteholder.  Under Section 5 of the Guaranties, all obligations are "recourse obligations" of Guarantors and "not restricted by any limitation on personal liability."  And Guarantors' obligations under the Guaranties are joint and several, direct and immediate, and not conditional or contingent upon pursuit of any remedies against Borrowers or with respect to the Properties.  *See* Guaranty at page 3 and Sections 4(a) and 5(u).  True and correct copies of the Guaranties are attached hereto as Exhibit 3.

17.    Guarantors are liable to Plaintiff under Section 1 of the Guaranties for all "Costs" incurred by Plaintiff resulting from the following conduct relevant to this lawsuit:

> 1(c)    Waste committed on the Property or damage to the Property
> as a result of intentional misconduct or gross negligence or
> the removal of all or any portion of the Property in violation
> of the terms of the Loan Documents.

18.    "Costs" are broadly defined in Section 1 of the Guaranties to include "any and all liabilities, obligations, losses, damages, costs, fees, expenses, claims, demands, settlements, awards and judgments of any nature or description whatsoever (including, without limitation, legal fees and costs, as well as other expenses incurred … ) …"

19.    In addition, under Section 1(d) of the Guaranties, Guarantors are immediately and personally liable to Plaintiff *__both__* for Costs *__and__* "for all sums then outstanding pursuant to the Loan Documents (including, but not limited to, principal and accrued interest)" following Borrowers' and/or Guarantors' "failure to disclose a material fact … in connection with the Property or the

Loan."

  **(vi)**  <u>**Loan Documents**</u>

  20.  The Notes, the Mortgages, and Guaranties, and any and all other documents executed in connection therewith, or relating in any way thereto, are referred to, individually or collectively, as the context may require, as the "<u>**Loan Documents**</u>."

  **(vii)**  <u>**Assignment of Loan Documents to Plaintiff**</u>

  21.  Pursuant to certain endorsements, assignments and/or transfers of the Loan Documents, Plaintiff is the current owner of the Loan Documents.  True and correct copies of the chain of assignments of the Notes and other Loan Documents from Original Noteholder to Plaintiff are attached hereto as <u>Exhibit 4</u>.  Plaintiff is the holder of the Notes and is in possession of the Notes, as the date of commencement of this action.

  **(viii)**  <u>**Indebtedness**</u>

  22.  For purposes of this Complaint, all of the amounts owed by Borrowers to Plaintiff under the Loan Documents, including without limitation any late fees, default interest, and costs and expenses incurred by Plaintiff in connection with the enforcement of the Mortgages, including court costs and attorneys' fees, are collectively referred to herein as the "<u>**Indebtedness**</u>."

  **B.**  **BORROWERS' BREACHES OF THE LOAN DOCUMENTS**

    **(i)**  <u>**Termination of Two (2) Hotel Franchise Agreements**</u>

  23.  Section 1.30(b) of each Mortgage provides that in no event shall the Franchise Agreement be terminated without the prior written consent of Plaintiff, and that the applicable Borrower shall comply with all of its duties and obligations under the Franchise Agreement. Section 2.2 of each Mortgage provides that the termination of the Franchise Agreement, that is not replaced with another Franchise Agreement acceptable to Plaintiff, shall, in Plaintiff's sole

discretion, constitute an Event of Default under the Mortgage. Franchise Agreement, as defined in Section 1.1(rr) of each Mortgage, means the franchise agreement pursuant to which the applicable Borrower has the right to operate the hotel located on its Property under a name and/or hotel system controlled by the applicable franchisor.

### (a)    *Termination of Franchise for the Norman Property*

24.    The Holiday Inn franchisor of the Norman Property terminated the franchise for that hotel effective February 3, 2014, stating that Norman Borrower failed to "achieve minimum quality and service scoring requirements" under the governing Franchise Agreement. A true and correct copy of the January 28, 2014 letter referencing the Norman Termination Default is attached hereto as Exhibit 5. Termination of the Norman Borrower's franchise is referred to herein as the "**Norman Termination Default.**"

25.    In violation of the Loan Documents, the Norman Borrower failed to notify Plaintiff of the Norman Termination Default until May 5, 2014. Plaintiff requested that the Norman Borrower provide Plaintiff with its plan to re-establish its Franchise Agreement by June 5, 2014, and that failure to do so would constitute an Event of Default under Section 2.2 of the Mortgage. The Norman Borrower did not do so. Accordingly, on July 30, 2014, Plaintiff sent to the Norman Borrowers (with a copy to all other Borrowers) a Notice of Event of Default and Intent to Accelerate (the "**July 30 Default Letter**"), notifying the Norman Borrower that an Event of Default had occurred under Section 2.2 of the Mortgage, and providing additional time (until August 8, 2014) for the Norman Borrower to resolve the Norman Termination Default, failing which Plaintiff would accelerate the maturity dates in all of the Notes. A true and correct copy of the July 30 Default Letter is attached hereto as Exhibit 6. The Norman Borrower failed to cure the Norman Termination Default, and therefore, Plaintiff sent to the Borrowers on August

21, 2014 an Acceleration Letter (the "**August 21 Acceleration Letter**") notifying the Borrowers that the maturity dates of all of the Loans had been accelerated, making immediately due and payable all (a) unpaid principal due under the Notes; (b) accrued interest due under the Notes; and (c) other amounts due under the Loan Documents. A true and correct copy of the August 21 Acceleration Letter is attached hereto as Exhibit 7.

### (b)   *Termination of Franchise for the Atoka Property*

26.     The Best Western franchisor of the Atoka Property terminated the franchise for that hotel effective July 30, 2014, as described below. On August 6, 2014, the Plaintiff obtained a letter dated July 10, 2014 (the "**July 10 Letter**") sent to Atoka Borrower by the franchisor Best Western International, Inc., indicating that the franchisor was considering terminating the Franchise Agreement for the Atoka Property, and that a hearing on the issue was scheduled for July 22, 2014. True and correct copies of the July 10 Letter and the email correspondence with the franchisor are attached hereto as Exhibit 8. As required by the Loan Documents, Borrowers did not notify Plaintiff of the hearing itself or the results of the hearing until August 19, 2014, when Borrower's representatives sent Plaintiff a letter dated July 30, 2014, from Best Western to Premier, whereby the Best Western franchisor reported as follows:

> After full and complete consideration of the information provided, it was the decision to cancel all aspects of the property's membership effective immediately because on the July 2, 2014, Quality Assurance Assessment report, the property received a single "RESTRICTED" Overall Guest Room and Public Area Status score of 429 points [out of 1,000].

> We have deleted the property's listing from our reservation system and cancelled your participation in Best Western's master credit card agreements, You must take appropriate steps to discontinue all use of the Best Western name and logo at your property effective immediately.

True and correct copies of the July 30 Best Western Letter and the email correspondence with Borrower's representatives are attached hereto as Exhibit 9. Termination of the Atoka Borrower's

10

franchise is referred to herein as the "**Atoka Termination Default.**"

27.    Accordingly, the Atoka Termination Default constitutes a separate Event of Default under Section 2.2 of the Mortgage for the Atoka Property.

### (ii)    Waste, Impairment of Property Value, Failure to Maintain the Properties

28.    Section 1.16 of each Mortgage provides that Borrowers shall not commit, suffer or permit any waste on the Properties, and that Borrowers shall maintain the Properties in good condition and repair. In addition, Section 2.1(m) of each of the Mortgages provides that an Event of Default shall occur if the Properties, or any part thereof, is subjected to actual or threatened waste so that the value of the Properties is materially diminished thereby, and Plaintiff determines (in its subjective determination) that it is not adequately protected from any loss, damage or risk associated therewith.

#### (a)    *Waste at the Norman Property*

29.    Despite repeated notices from the Holiday Inn franchisor to the Norman Borrower beginning in December 2012 indicating that the Norman Property continued to fail to meet brand quality standards, the Norman Borrower has never fixed the substantial disrepair or service deficiencies at the Norman Property. As a result, the Norman Property remains in poor physical condition and is subjected to actual or threatened waste, as evidenced by a recent estimate prepared by Focus Management Group ("**Focus**"), at Borrowers' behest, that it would cost $6.3 million to fix Property disrepair and damage related just to the Norman Property losing its flag. A true and correct copy of the Focus estimate is attached hereto as Exhibit 10.

#### (b)    *Waste at the Atoka Property*

30.    The failing grade (429 out of 1,000) on Best Western's Quality Assurance Assessment, dated July 8, 2014 (the "**QA Assessment**") establishes that the Atoka Property is in

11

poor physical condition, with significant amounts of identified physical disrepair and/or damage, including:

- broken deadbolt locks;

- damaged walls and doors;

- dirty and stained linens;

- bugs in the rooms;

- broken overhead and exit lights;

- deterioration of parking lots and curbs;

- substantially worn signage;

- burn marks in blankets, comforters, and lounge chairs; and

- missing/broken appliances.

A true and correct copy of the QA Assessment is attached hereto as Exhibit 11.

31.    Accordingly, Borrowers' commission of waste and failure to address significant deferred maintenance at the Atoka Property and the Norman Property (and potentially all of the Properties) is an Event of Default under Section 2.1(m) of the Mortgage.

32.    Based on the Borrowers' repeated demonstrated failure to (a) properly maintain the Atoka and Norman Properties; and (b) notify Plaintiff of problems at the Properties, including threats to terminate *and actual termination of* Franchise Agreements, Plaintiff believes that similar waste and deferred maintenance issues exist or will soon exist at the remaining Properties.

### (iii)    Unauthorized Change of Property Manager

33.    When the Loans were originated, all Properties were managed by Premier Hospitality Management, Inc., ("**Premier**") pursuant to identical management agreements, referred to in the Mortgages as the "**Management Agreement**." The parties agreed under Section 1.1(ss) of the Mortgages that Borrowers "shall not terminate, cancel, modify, renew or extend the

Management Agreement, or enter into any agreements relating to the management or operation of the Property with Manager or any other party without the express written consent" of Plaintiff.

34.    On information and belief, in 2014 or earlier, Borrowers and Guarantors, without any notice or authorization (written or oral) from Plaintiff, terminated property management agreements with Premier for the Properties and executed new management agreements with Focus. Like Premier, Focus is closely affiliated with Borrowers and is owned and controlled by Guarantors.

### (iii)    Cross Defaults

35.    Pursuant to Section 4.34 of the Mortgages, an Event of Default under any other Mortgage  constitutes an Event of Default under such each and every Mortgage.  Accordingly, each and all of the Events of Default described above with respect to the Norman Property and Atoka Property constitute Events of Default with respect to all of the other Properties under the respective Loan Documents.

### C.    GUARANTORS' BREACHES OF THE GUARANTIES AND RECOURSE LIABILITY

### (i)    Waste on the Properties

36.    As outlined above, Borrowers have failed to maintain the Properties and have committed waste on the Properties, including but not limited to the loss of two hotel flags caused by Borrowers' mismanagement, which has severely reduced the value of Plaintiff's collateral below the current balance of the Loans.  Consequently, Borrowers are immediately and personally liable to Plaintiff for all Costs under Section 1(c) of the Guaranties.  Such Costs continue to accrue daily, but include (a) the remaining deficiency on the Loans following the foreclosures of the Properties sought by this lawsuit; (b) costs and expenses associated with remediating the Properties following Borrowers' waste and mismanagement; and (c) attorneys' fees and costs incurred by

13

Plaintiff in connection with this lawsuit.

**(ii)    Failure to Disclose Material Facts Regarding the Loans and/or the Properties**

37.    Further, as also outlined above in part, Borrowers and Guarantors failed to disclose

several material facts to Plaintiff regarding the Loans and the Properties, all in violation of Section

1(d) of the Guaranties, including the following:

a.    Failure to disclose correspondence, assessments, and other documentation from franchisors indicating that the Norman and Atoka Property failed brand standards and that hearings had been set to determine whether to terminate corresponding Franchise Agreements;

b.    Failure to disclose terminations of the Norman and Atoka Franchise Agreements;

c.    Failure to disclose correspondence, assessments, and other documentation from franchisors indicating that the Durant, Oklahoma Comfort Inn & Suites and the Sherman, Texas Comfort Suites both failed "Brand Standards Reports" performed by the respective franchisors; and

d.    Failure to disclose unauthorized change of property management for both the Oklahoma and Texas Properties.

38.    Because Borrowers' and Guarantors' disclosure failures relate to the four (4)

Oklahoma Properties and the two (2) Texas Properties, Guarantors are immediately and personally

liable, with respect to all six Loans, for _**both**_ for Costs _**and**_ "for all sums then outstanding pursuant

to the Loan Documents (including, but not limited to, principal and accrued interest)" following

Borrowers' and/or Guarantors' "failure to disclose a material fact … in connection with the

Property or the Loan." *See* Section 1(d) of the Guaranties.  As of the date of this filing, the

Indebtedness on the Loans and the Texas Loans is at least $19,398,879, plus collection expenses

and other charges, including default interest, that continues to accrue daily, and which remains

unpaid.

## IV.   CAUSES OF ACTION

### A.   FORECLOSURE OF MORTGAGES

39.     For the purpose of securing the Indebtedness, Borrowers executed and delivered to the Original Noteholder the Mortgages and other Loan Documents, whereby Borrowers granted Original Noteholder a mortgage lien against the Properties described in the respective Mortgages, as that term more fully described and defined in paragraphs (A) through (R) at pages 1 through 4 of the Mortgages.  Such descriptions and definitions are incorporated herein by reference.  True and correct copies of the Legal Descriptions for each of the real properties covered by the Mortgages are attach hereto and made a part hereof as Exhibit 12.

40.     The Mortgages were duly recorded in the records of the respective County in which the Property is situated, after the required mortgage tax was paid.  The recording information for each Mortgage is set forth in Table 1.

41.     Plaintiff gave Borrowers notice of the defaults in the July 30 Default Letter.  In the August 21 Acceleration Letter, Plaintiff notified Borrowers that as a result of their continuing default and failure to cure, Plaintiff, pursuant to the provisions of the Loan Documents had: (i) elected to accelerate the maturity date of the Notes and declare the Indebtedness to be immediately due and payable; and (ii) demanded immediate payment of all amounts owed by the Borrowers under the Loan Documents.  Borrowers have failed and refused to pay all amounts owed by the Borrowers under the Loan Documents and, as of the date of the filing of this Complaint, Borrowers remain in default and have failed and refused to pay and perform the obligations due and owing under the Loan Documents.

42.     As of October 1, 2014, the total amounts due and owing under the Loan Documents was $20,663,625.48, plus attorneys' fees and costs.  The total amounts due and owing as of

October 1, 2014 are reflected in Exhibit 13 attached hereto and include (a) unpaid principal, interest, and default interest in the amount of $20,484,884.62; (b) fees, charges, and out of pocket costs incurred by Plaintiff and provided for in the Loan Documents in the amount of $5,474.00; (c) a prepayment premium of $894,604.51; (d) credits for funds held in suspense and escrow in the amount of $721,337.65; and (e) attorneys' fees and costs. Should Borrowers continue to make payments, the amounts owed will change as payments are credited to the Indebtedness according to the terms of the Loan Documents. Plaintiff reserves its right to accept payments from Borrowers and apply said payments to the Indebtedness while continuing to prosecute this action for breach of the Loan Documents as set forth herein.

43.    As a result of Borrowers' defaults and breaches of the Loan Documents, Plaintiff is entitled to foreclose its Mortgages and other interests in and to the Properties, and is entitled to have any and all sums due and owing by Borrowers under the Loan Documents paid in full from the proceeds of a sale of the Properties.

**B.    BREACH OF THE GUARANTIES**

44.    The Guaranties constitute valid, binding, and enforceable agreements between Guarantors and Plaintiff. As outlined above, Guarantors have breached the Guaranties.

45.    Guarantors' breaches of the Guaranties have caused damage to Plaintiff within the jurisdictional limits of this Court, and Plaintiff is thereby entitled to pursue all remedies available to it, both under the Guaranties and in law or in equity.

**C.    CLAIM FOR ATTORNEYS' FEES**

46.    Because of Borrowers' and Guarantors' actions, Plaintiff has found it necessary to engage the undersigned counsel to prosecute this action and to protect its rights. Pursuant to Sections 1 and 5(n) of the Guaranties, Section 3.7 of the Mortgages, and Okla. Stat. Ann. Tit. 12

§ 936, Plaintiff is entitled to its reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action.

## V.   CONDITIONS PRECEDENT

47.   Plaintiff has satisfied all conditions precedent to bringing this action.

## VI.   PRAYER

48.   Accordingly, Plaintiff, U.S. Bank National Association, successor-in-interest to Bank of America, National Association, successor-by-merger to LaSalle Bank National Association, as Trustee for the Registered Holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, 2005-PWR9, prays that it have judgment in its favor and against Borrowers and Guarantors, as follows:

a.   Judgment in rem against said Borrowers for all sums due under the Notes and other Loan Documents after giving credit for all payments made.

b.   Judgment determining the Mortgages to be valid and superior liens, security interests and encumbrances on and against the Properties in accordance with the terms of the Mortgages including but not limited to the cross-collateral provisions of the Mortgages.

c.   Judgment ordering that the liens and security interests, encumbrances and other interests created by the Notes, Mortgages and other Loan Documents be foreclosed and ordering that the Properties covered thereby be sold, with or without appraisement, as Plaintiff may elect at the time judgment is rendered and in accordance with the provisions of the Mortgages subject only to unpaid ad valorem and real property taxes, if any, to satisfy said judgment, and that the proceeds of said sale be applied:  First, to the payment of all costs, expenses and fees herein; and Second, to the payment in satisfaction of the claim and judgment of Plaintiff and that the surplus, if any, be paid into the court pending further order of the court;

17

      d.     Judgment determining the right, title and interest of Borrowers, and any person or entity claiming by or through them, in and to the Properties, to be subject, junior and inferior to the liens and interests of Plaintiff and adjudging that, upon confirmation of the sales described above, Borrowers and all persons or entities claiming by, through or under it, be forever barred, foreclosed and enjoined from asserting or claiming any right, title, interest, estate or equity of redemption in or to said Properties or to any portion thereof;

      e.     Judgment against Guarantors and in favor of Plaintiff for its actual damages as provided in the Loan Documents, including the Guaranties, and to the extent allowed by applicable law;

      f.     Judgment against Guarantors and Borrowers in favor of Plaintiff for its reasonable and necessary attorneys' fees and costs, both accrued and accruing; and

      g.     Judgment for any other relief, whether at law or in equity, to which the court deems Plaintiff entitled.

Respectfully submitted,

KEVIN BLANEY, OBA #860
L. CHRISTOPHER TWEEDY, OBA #20875
ELIZABETH A. MOREHEAD, OBA #17673
RAYMOND H. TIPTON III, OBA #20871
D. Ward Hobson, OBA #21698
BLANEY AND TWEEDY, PLLC
2601 City Place
204 N. Robinson Avenue
P.O. Box 657
Oklahoma City, OK 73101-0657
Telephone:  (405) 235-8445
Facsimile:  (405) 236-3410
e-mail:  kblaney@btlawokc.com
e-mail:  ctweedy@btlawokc.com
e-mail:  bmorehead@btlawokc.com
e-mail:  ttipton@btlawokc.com

with

CHRISTOPHER L. CHAUVIN
Texas Bar No. 24045644
christopher.chauvin@tklaw.com
*Pro Hac Vice Application Pending*
MATTHEW M. MITZNER
Texas Bar No. 24068911
*Pro Hac Vice Application Pending*
matthew.mitzner@tklaw.com
THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (facsimile)

*Attorneys for Plaintiff*

ATTORNEY'S LIEN CLAIMED.

19

STATE OF OKLAHOMA            )
                             )ss.
COUNTY OF OKLAHOMA           )

KEVIN BLANEY, of lawful age, being first duly sworn, deposes and says: that he is an attorney for Plaintiff in the above-entitled cause; that he has read the above and foregoing Complaint and has personal knowledge thereof; that he knows the contents thereof, and that the statements therein made are true and correct to the best of his knowledge and belief.

KEVIN BLANEY

SUBSCRIBED AND SWORN to before me this 17th day of October, 2014.

(SEAL)



NOTARY PUBLIC